IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| C. BRYAN HARTMAN and<br>MICHELE RENEE HARTMAN,<br><br>    Plaintiffs<br>        v.<br><br>STATE OF PENNSYLVANIA,<br>PENNSYLVANIA STATE POLICE,<br>TROOPER JEREMIAH R. MISTICK,<br>and TROOPER SHAWN PANCHIK,<br><br>    Defendants | :  CIVIL ACTION NO. 1:15-CV-523<br>:<br>:  (Chief Judge Conner)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **MEMORANDUM**

Plaintiffs C. Bryan Hartman and Michele Renee Hartman (collectively, "the Hartmans") commenced this civil action against the State of Pennsylvania ("the Commonwealth"), the Pennsylvania State Police ("the State Police"), and State Police Troopers Shawn Panchik ("Trooper Panchik") and Jeremiah R. Mistick ("Trooper Mistick"), asserting Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983. (Doc. 1). Defendants move the court for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 18). The court will grant defendants' motion.

I.    **Factual Background & Procedural History**[1]

At all times relevant to this action, the Hartmans resided on a multi-acre property in York, Pennsylvania. (Doc. 1 ¶¶ 2, 3; Doc. 13 ¶¶ 2-3; Doc. 19 ¶ 2; Doc. 24 ¶ 2). The Hartmans owned a pet dog, a pit-bull terrier mix named Lucy. (Doc. 19 ¶ 1; Doc. 24 ¶ 1). On March 18, 2013, between 3:00 and 4:00 P.M., Michele Hartman let Lucy out onto the Hartmans unfenced property for several minutes. (Doc. 19 ¶¶ 1-3; Doc. 24 ¶¶ 1-3). Although the Hartmans had trained Lucy to stay within the property lines, she wandered beyond them and became lost. (Doc. 19 ¶¶ 2-3; Doc. 24 ¶¶ 2-3). At approximately 5:30 P.M., Darlene Myers ("Myers") discovered an unfamiliar dog (Lucy) outside her home in Glen Rock, Pennsylvania. (Doc. 19 ¶ 4; Doc. 24 ¶ 4; see also Doc. 20-1 at 4). Lucy did not initially cause a disturbance. (Doc. 20-1 at 4).

Myers contacted the State Police to report the unfamiliar dog in her yard. (Doc. 19 ¶ 5; Doc. 24 ¶ 5). The State Police first referred her to the local dog law officer. (Doc. 19 ¶ 6; Doc. 24 ¶ 6). Myers was unable to reach the dog law officer, and she received no response to her message. (Doc. 19 ¶ 7; Doc. 24 ¶ 7; see also Doc. 20-2, Trooper Jeremiah R. Mistick Dep. 39:20-22, Feb. 11, 2016 ("Mistick Dep.")).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 19, 24). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

2

Lucy remained on Myers' property. (Doc. 19 ¶¶ 17-19; Doc. 24 ¶¶ 17-19). As the temperature dropped and it began to rain and sleet, Lucy continuously barked and attempted to gain entry to Myers' home. (Doc. 19 ¶¶ 17-18; Doc. 24 ¶¶ 17-18; see also Mistick Dep. 44:3-4). She reportedly scratched or chewed at the rear screen door. (Doc. 19 ¶ 17; Doc. 24 ¶ 17). Myers yelled at Lucy to scare her away, but Lucy would return and continue her efforts to come into the home. (Mistick Dep. 43:14-18; see also Doc. 19 ¶ 19; Doc. 24 ¶ 19). Myers contacted the State Police again sometime after 11:00 P.M., and Troopers Panchik and Mistick were dispatched. (Mistick Dep. 38:1-39:8, 39:18-20).

Between midnight and 2:00 A.M., Troopers Panchik and Mistick arrived at Myers' home. (Mistick Dep. 39:18-20, 41:15-22). By the time they exited the patrol car, they could hear a dog barking. (Doc. 19 ¶ 22; Doc. 24 ¶ 22; see also Mistick Dep. 42:19-23; Doc. 20-3, Trooper Shawn Panchik Dep. 63:11-14, Feb. 11, 2016 ("Panchik Dep.")). The dog was located outside the back of the home, and Trooper Panchik walked along the right side of the residence to peer around the corner at it. (Mistick Dep. 44:7-15). Trooper Mistick followed a fair distance behind him. (See id. 44:16, 45:6-9). At that time, Myers' backyard was illuminated by a spotlight. (Doc. 19 ¶ 23; Doc. 24 ¶ 23). Trooper Panchik confirmed to Trooper Mistick that the dog was "a pit" and that it wore no collar or tags. (Doc. 19 ¶ 25; Doc. 24 ¶ 25; see also Mistick Dep. 44:19-24).

Lucy observed Trooper Panchik at the corner of the house and began to run toward him. (Doc. 19 ¶¶ 27, 28; Doc. 24 ¶¶ 27, 28; see also Panchik Dep. 68:17-18). Trooper Panchik stepped backward and yelled a command to make her stop. (Doc.

3

19 ¶ 29; Doc. 24 ¶ 29; see also Mistick Dep. 44:24-45:4). Lucy ran a little farther and then halted no more than five to seven yards from him. (Doc. 19 ¶¶ 29-30; Doc. 24 ¶¶ 29-30; see also Panchik Dep. 69:25-70:14). At this point, Lucy was in view of both troopers. (Mistick Dep. 45:12-17). The troopers saw Lucy lower her head and growl at Trooper Panchik. (Doc. 19 ¶ 30; Doc. 24 ¶ 30; see also Doc. 20-1 at 5; Panchik Dep. 71:3-4). Trooper Mistick also saw the hair on her back stand up. (Doc. 20-1 at 5). After Trooper Panchik unsuccessfully prompted Lucy to flee by yelling, he fired his gun, striking her in the head. (Doc. 19 ¶ 31; Doc. 24 ¶ 31; see also Doc. 20-1 at 5).

After the troopers explained to Myers what had transpired, they returned to the backyard. (Mistick Dep. 54:3-17). Trooper Mistick noticed that Lucy had not yet died, but that she had instead moved a short distance and was breathing shallowly. (Mistick Dep. 54:18-55:3). He fired a single round into her chest area, killing her. (Doc. 19 ¶ 32; Doc. 24 ¶ 32; see also Doc. 20-1 at 5; Mistick Dep. 54:25-55:3). Trooper Mistick then carried her body across the road on which Myers' home is located and deposited it on the other side of the guard rail. (Mistick Dep. 55:12-25). The Hartmans learned of Lucy's death a day later. (Doc. 20-1 at 4).

On March 16, 2015, the Hartmans filed their complaint (Doc. 1) against defendants. Defendants submitted their answer (Doc. 13) on July 31, 2015. On March 15, 2016, defendants filed the instant motion (Doc. 18) for summary judgment. The motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

**III.     Discussion**

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). The parties do not dispute that Troopers

5

Panchik and Mistick acted under color of state law. (See Doc. 1 ¶¶ 49, 72; Doc. 13 ¶¶ 49, 72).

In the instant matter, the Hartmans assert both Fourth and Fourteenth Amendment claims against the Commonwealth, State Police, and Troopers Panchik and Mistick in their official and individual capacities. (Doc. 1). As a threshold matter, the court will address defendants' sovereign immunity defense. (Doc. 21 at 8-9).

### A.   Sovereign Immunity

Defendants argue that the Hartmans' Fourth and Fourteenth Amendment claims against the Commonwealth and State Police are barred under the doctrine of sovereign immunity. (Doc. 21 at 8). Plaintiffs appropriately concede that these defendants are immune from suit under the Eleventh Amendment. (Doc. 22 at 5); see also U.S. CONST. amend. XI; 42 PA. CONS. STAT. § 8521(b); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984); Lavia v. Pennsylvania, 224 F.3d 190, 195-96 (3d Cir. 2000).

Moreover, suits against state officials in their official capacities are treated as suits against the state, and these officials will share in the state's sovereign immunity. See Hafer v. Melo, 502 U.S. 21, 25 (1991). The Hartmans' claims against Troopers Panchik and Mistick in their official capacities are consequently also barred by sovereign immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010); Allen v. Wetzel, No. 1:14-CV-2471, 2016 WL 3551477, at *3 (M.D. Pa. June 30, 2016) (Conner, C.J.). Hence, only the Fourth and Fourteenth

Amendment claims against Troopers Panchik and Mistick in their individual capacities remain.

### B. Fourth Amendment Claims Against Troopers Panchik and Mistick in Their Individual Capacities

The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV.  A "seizure" of personal property takes place when "there is some meaningful interference with an individual's possessory interests in that property."  Soldal v. Cook Cty., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).  Under Pennsylvania law, a dog has the status of personal property.  3 PA. STAT. AND CONS. STAT. ANN. § 459-601(a); see also Miller v. Peraino, 626 A.2d 637, 640 (Pa. Super. Ct. 1993).  Accordingly, in Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit held that "the killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment."  Brown, 269 F.3d at 210.

The "ultimate touchstone" of the Fourth Amendment is "reasonableness."  Brigham City v. Stuart, 547 U.S. 398, 403 (2006).  Specifically, in determining whether a seizure is unreasonable, the "nature and quality of the intrusion" on a person's possessory interest must be balanced against "the importance of the governmental interests" claimed to legitimate the intrusion.  United States v. Place, 462 U.S. 696, 703 (1983).  In the case of an at-large pet, the government has an

7

interest in its restraint for the protection of persons or property.  See Brown, 269 F.3d at 210.  Moreover, the state's interest is particularly strong "when there is reason to believe the pet poses an imminent danger." Id. at 210.

A court's reasonableness inquiry is objective, to wit: Were the "officers' actions 'objectively reasonable' in light of the facts and circumstances confronting them?"  Graham v. Connor, 490 U.S. 386, 397 (1989); see also Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003); Pettit v. New Jersey, No. 09-CV-3735, 2011 WL 1325614, at *5 (D.N.J. Mar. 30, 2011).  Although this question is often one of fact reserved for the jury, summary judgment may be entered if the district court "resolv[es] all factual disputes in favor of the plaintiff" and finds that the officers' conduct was objectively reasonable.  Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)); see also Smith v. Dauphin Cty. Adult Prob. Dep't, No. 1:06-CV-2009, 2007 WL 2692320, at *5 (M.D. Pa. Sept. 12, 2007) (Conner, J.).

In the case *sub judice*, the Hartmans contend that the following conduct by Troopers Panchik and Mistick precludes summary judgment: (1) failure to formulate a plan despite knowing they would encounter a dog; (2) failure to attempt non-lethal use of force first; and (3) shooting Lucy when she was not lunging, but merely stationary.  (See Doc. 22 at 5-8).  After thorough review of the record, the court disagrees.

The troopers had knowledge of the dog law officer's unavailability and the need to deal with the increasingly exigent situation at Myers' home "the best [they could]." (Panchik Dep. 54:17-20).  There is no evidence that Officer Panchik

8

intended to simply confront Lucy. Rather, he testified that he wished to discreetly observe her appearance, including any indicia of ownership, and whether her conduct was consistent with information provided at the time of the troopers' dispatch. (Id. 63:24-64:5, 67:11-21).

The Hartmans maintain that the troopers could have preliminarily observed Lucy from inside Myers' home. (Doc. 22 at 8). First, however, this plan could easily have gone awry depending upon how close Lucy was to the entrance of the home. (See Mistick Dep. 43:1-9). Second, assuming *arguendo* that another course of action would have constituted the best one, "objectively reasonable" conduct is a considerably less demanding standard than "ideal conduct." See, e.g., Pettit, 2011 WL 1325614, at *7. Lucy's interaction with Trooper Panchik prompted a quick turn of events, (see Mistick Dep. 44:16-45:4), but the court finds reasonable his approach.[2]

Moreover, Trooper Panchik's decision to discharge his firearm rather than utilize a taser or baton does not occasion a triable issue. After Lucy noticed Trooper Panchik, she rushed toward him and ran still closer after he yelled, then came to a halt. (Panchik Dep. 69:24-70:12). The parties agree that Lucy was standing still, but the record establishes that she simultaneously lowered her head, the hair on her back standing, and growled at a distance of no more than five to seven yards from Trooper Panchik. (Doc. 19 ¶ 30; Doc. 24 ¶ 30; see also Doc. 20-1

---

[2] The precise moment the troopers drew their firearms is uncertain in the record. (Panchik Dep. 71:23-73:23). However, the record indicates that Troopers Panchik and Mistick drew their weapons in response either to Lucy running toward them or to her growling at them. (Id.; Doc. 20-1 at 5). Hence, the evidence demonstrates that the troopers had not resolved to contain Lucy via lethal force at the outset but adjusted to quickly-evolving circumstances. See Plumhoff v. Rickard, 572 U.S. __, 134 S. Ct. 2012, 2020 (2014).

at 5; Panchik Dep. 70:18-71:4). Trooper Panchik knew that Lucy was a pit bull breed, and Myers' account of her clearly agitated behavior had been conveyed to him at the time of dispatch. (Panchik Dep. 63:24-65:23, 68:14-15). From these facts, he reasonably inferred a proximate, aggressive, and immediate threat.[3]

The Hartmans point to one of Trooper Panchik's prior experiences with pit bulls to suggest that his use of force against Lucy was an unwarranted aberration. (Doc. 22 at 5-7). In that circumstance, Trooper Panchik separated two pit bulls that were fighting in the street by tasing both of them. (See Panchik Dep. 20:24-21:22). In the instant matter, however, Trooper Panchik did not encounter two dogs thoroughly engaged in fight but was directly confronted by a dog that he reasonably believed to be dangerously aggressive. (Panchik Dep. 63:24-65:23, 68:14-15; see also Doc. 25 at 25).

Finally, the Hartmans submit that Trooper Mistick's failure to obtain a microchip scanner after the incident and his transfer of Lucy's body are "evidence of consciousness of guilt" on the part of the troopers. (Doc. 22 at 8). Such conjecture is belied by the fact that Trooper Mistick included a description of how he disposed of Lucy's body in his own incident report. (Doc. 20-1 at 5). Furthermore, Trooper Mistick stated:

---

[3] The Hartmans do not focus upon Trooper Mistick's firing of the second and fatal shot as unreasonable conduct. (See Doc. 22 at 5-8). The court thus only briefly notes that this use of force, expedient to ending Lucy's suffering, was both reasonable and consonant with Pennsylvania state law permitting officers to "humanely" put down an at-large dog deemed threatening. See 3 PA. STAT. AND CONS. STAT. ANN. § 459-302(a); (Mistick Dep. 54:18-55:3).

> We don't have a [microchip] reader or anything like that.
> I did reach out after the incident. One of the dispatchers
> that works at the York station is heavily involved, like
> SPCA. [ . . . ] And she reached out to the dog law officer
> and told her.

(Mistick Dep. 57:3-10). In the full context of the record evidence, Trooper Mistick's conduct cannot characterized as indicative of wrongdoing respecting the Hartmans' constitutional rights.

In sum, the court finds that the actions of Troopers Panchik and Mistick were objectively reasonable in light of the totality of the circumstances. This finding comports with case law concerning similar pet seizures, as the instant matter clearly pulls toward cases in which the safety interests of the public or public officials ultimately prevails. Compare Stephenson v. McClelland, 632 F. App'x 177, 184-85 (5th Cir. 2015); Altman v. City of High Point, N.C., 330 F.3d 194, 205-07 (4th Cir. 2003); Pettit, 2011 WL 1325614, at *1-2, 5-7, with Criscuolo v. Grant Cty., 540 F. App'x 562, 563-64 (9th Cir. 2013); Brown, 269 F.3d at 208-09, 211-12. The court concludes that Troopers Panchik and Mistick are entitled to summary judgment on the Hartmans' Fourth Amendment claim.

### C. Fourteenth Amendment Claims Against Troopers Panchik and Mistick in Their Individual Capacities

The Hartmans assert a substantive due process claim under the Fourteenth Amendment against Troopers Panchik and Mistick. (See Doc. 1 ¶¶ 71-82; Doc. 22 at 8-9). It is well-settled that reliance on the Due Process Clause of the Fourteenth Amendment is inappropriate when the conduct at issue is "governed by a specific constitutional amendment." Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir.

2000); see also Cty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998); Williams v. City of Phila., No. 09-4826, 2010 WL 4181873, at *5 (E.D. Pa. Oct. 22, 2010).  As discussed *supra*, the gravamen of the Hartmans' due process claim falls squarely under Fourth Amendment unlawful seizure jurisprudence.  See Brown, 269 F.3d at 209-11; see also Schor v. N. Braddock Borough, 801 F. Supp. 2d 369, 379 (W.D. Pa. 2011); Copenhaver v. Borough of Bernville, No. 02-8398, 2003 WL 26616224, at *5 (E.D. Pa. Jan. 10, 2003); Bryant v. Vernoski, No. 11-263, 2011 WL 4400820, at *3 (M.D. Pa. Sept. 1, 2011).  The court will therefore grant summary judgment on the Hartmans' Fourteenth Amendment claims in the troopers' favor.

## IV.  Conclusion

The court is not unsympathetic to the unfortunate loss of a beloved family pet.  Nevertheless, the court is compelled to grant defendants' motion (Doc. 18) for summary judgment in its entirety.  An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:	September 1, 2016